UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JACQUELINE MARREN, | § | |
| | § | |
| Plaintiff, | § | Cv. No. SA:12-CV-00631-DAE |
| | § | |
| vs. | § | |
| | § | |
| PATRICIA PLIEGO STOUT, | § | |
| INDIVIDUALLY AND AS | § | |
| PRESIDENT OF ALAMO TRAVEL | § | |
| MANAGEMENT, LLC d/b/a ALAMO | § | |
| TRAVEL GROUP, INC., | § | |
| | § | |
| Defendants. | § | |

ORDER: (1) GRANTING PLAINTIFF'S MOTION TO REMAND;
(2) DENYING WITHOUT PREJUDICE AS MOOT
DEFENDANTS' MOTION TO DISMISS

On March 6, 2013, the Court heard oral argument on Plaintiff's

Motion to Remand to State Court (doc. # 17).  Jeff Small, Esq., and Olga Brown,

Esq., appeared at the hearing on behalf of Plaintiff; Margaret Cheryl Kirby, Esq.,

appeared on behalf of Defendants.  After reviewing the Motion and the supporting

and opposing memoranda, the Court **GRANTS** Plaintiff's Motion to Remand

(doc. # 17) and **DENIES WITHOUT PREJUDICE AS MOOT** Defendants'

Motion to Dismiss (doc. # 5).

## BACKGROUND

On June 1, 2012, Plaintiff Jacqueline Marren filed suit in the 438th Judicial District Court of Bexar County, Texas, against Defendants Alamo Travel Management, LLC d/b/a Alamo Travel Group, Inc. ("Alamo Travel"); and Patricia Pliego Stout ("Stout"), individually and as President of Alamo Travel.  (Marren v. Stout, Civ. No. 2012-CI-09064; doc. # 1-3 ¶¶ 3, 4.)

Plaintiff worked for Defendant Alamo Travel from 2005 through June 4, 2010.  (Id. ¶ 8.)  According to the Complaint, Defendant Alamo Travel classified Plaintiff as an "employee" from 2005 through June 8, 2008; thereafter, coinciding with Plaintiff's relocation from San Antonio to Las Vegas, Alamo Travel reclassified her as an "independent contractor."  (Id.)  Plaintiff alleges that she performed the same duties in Las Vegas as she had in San Antonio but was denied benefits such as a 401(k) and paid vacation due to her improper reclassification.  (Id.)  When Plaintiff raised concerns regarding her worker classification, she "was never given a direct answer."  (Id.)

Worried that she was violating the law by paying federal income taxes as an independent contractor rather than an employee, on May 5, 2010, Plaintiff filed "an SS-Determination"—Form SS-8, Determination of Worker Status for Purposes of Federal Employment Taxes and Income Tax Withholding—with the

Internal Revenue Service ("IRS").  (Id. ¶ 9.)  Approximately one month later, on June 4, 2010, Alamo Travel fired Plaintiff.  (Id. ¶ 11.)  Then, on November 11, 2011, the IRS determined that between June 2008 and June 4, 2010, Plaintiff had in fact been an employee of Alamo Travel and that additional taxes were due from both parties.  (Id.)[1]

Plaintiff alleges three causes of action arising from this incident. First, Plaintiff alleges wrongful discharge under the Sabine Pilot doctrine, which prohibits employers from firing an employee based solely on her refusal to perform an illegal act.  (Id. ¶¶ 15–16; Sabine Pilot Serv., Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex. 1985)).  Plaintiff claims that as a result of this wrongful termination she "was damaged by loss of the Health and welfare benefits, past wages, and future wages and mental anguish."  (Id. ¶ 14.)

Second, Plaintiff alleges negligent misrepresentation, claiming that Defendant Alamo Travel negligently misrepresented to her in the course of its business "that the only way she could continue to work for Alamo Travel was to accept employment under the status of an independent contractor and that it was a legal classification of her worker status."  (Id. ¶¶ 17–18.)  Plaintiff claims that she

---

[1] It seems that Plaintiff meant to attach a copy of the IRS's determination to her Reply to Defendants' Response to the Motion to Remand (see doc. # 21 ¶ 14

3

relied on Defendant's misrepresentation to her detriment, "result[ing] in the following damages[:] loss of Health and Welfare Benefits, reduction in wages, loss of other benefits that Alamo Travel was required to pay and future wages." (Id. ¶ 19.)

Third and finally, Plaintiff alleges that Defendants committed fraud (1) when they represented to her that "relocating to Las Vegas with her family would not affect her employment with Alamo Travel and that she would continue as an 'employee'" (id. ¶ 20); and (2) when, a few days before Plaintiff's departure for Las Vegas, Defendant Stout represented to Plaintiff "that she would have to be classified as an 'independent contractor' in order to meet the legal requirements of her employment status in Nevada" (id. ¶ 21).  Defendants made these material representations, alleges Plaintiff, "with the intent to deprive [her] of her Health and Welfare Benefits, 401K contributions and other employee benefits required of an employer servicing a government contract . . . ."  (Id. ¶ 22.)

On June 26, 2012, Defendants timely removed the case pursuant to 28 U.S.C. § 1441(b), arguing that this Court has federal-question jurisdiction because "[t]he gravamen of Plaintiff's claims is that Defendants failed to abide by their statutory duty under FICA [the Federal Insurance Contributions Act,

_____

(directing the Court to "Exhibit A (IRS Determination Letter dtd [sic] October 28,

26 U.S.C. §§ 3101–3128] to classify plaintiff as an employee . . . .”  (Doc. # 1 ¶ 9.)

(See doc. # 1 at 1.)  On the following day, Defendants filed the Motion to Dismiss

for Failure to State a Claim that is now before the Court.  (Doc. # 5.)  The Court

scheduled a hearing on Defendants’ Motion for Monday, January 22, 2013.

(Doc. # 16.)  Over the weekend preceding the hearing, Plaintiff filed a Motion to

Remand to State Court, arguing that this case does not present a federal question

sufficient to justify the exercise of federal jurisdiction over her state-law claims.

(Doc. # 17.)  In light of Plaintiff’s Motion, the Court granted Defendants leave to

file a response and scheduled a hearing on both Motions for March 6, 2013.

DISCUSSION

I.   Plaintiff’s Motion to Remand to State Court

    A.  Legal Standard

       “It is axiomatic that the federal courts have limited subject matter

jurisdiction and cannot entertain cases unless authorized by the Constitution and

legislation.”  Coury v. Prot, 85 F.3d 244 (5th Cir. 1996).  Pursuant to Article III

and 28 U.S.C. § 1331, federal courts have jurisdiction over civil actions “arising

under” federal law.  This grant of jurisdiction is to be strictly construed, however,

and doubts are resolved against federal jurisdiction.  See Boelens v. Redman

---

2011”)).).  However, no such exhibit was attached to the Reply.

Homes, Inc., 748 F.2d 1058, 1067 (5th Cir. 1984).  The court must begin with the presumption that it does not have jurisdiction, and "the burden of establishing federal jurisdiction rests on the party seeking the federal forum."  Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir.), cert. denied, 534 U.S. 993 (2001) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). The parties may not create federal jurisdiction by consent.  Fed. R. Civ. P. 12(h)(3); Elam v. Kansas City S. Ry. Co., 635 F.3d 796, 802 (5th Cir. 2011).

A defendant may remove a case from state to federal court if the case could have been filed in federal court originally.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)).  A removing defendant bears the burden of establishing by a preponderance of the evidence that the federal court has subject-matter jurisdiction.  De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995).  The removal statutes are to be construed "strictly against removal and for remand."  Eastus v. Blue Bell Creameries, L.P., 97 F.3d 100, 106 (5th Cir. 1996); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–109 (1941) (acknowledging "the Congressional purpose to restrict the jurisdiction of the federal courts on removal" and the need for "strict construction of such legislation").  A district court must remand a case if, at any time before final judgment, it appears the court lacks subject-matter jurisdiction.  See 28

U.S.C. § 1447(c); <u>Grupo Dataflux v. Atlas Global Grp., L.P.</u>, 541 U.S. 567, 571

(2004); <u>In re 1994 Exxon Chem. Fire</u>, 558 F.3d 378, 392 (5th Cir. 2009).

    B.  <u>Federal-Question Jurisdiction</u>

        The presence or absence of a federal question necessary to support

removal is governed by the well-pleaded complaint rule, under which "federal

jurisdiction exists only when a federal question is presented on the face of the

plaintiff's properly pleaded complaint." <u>Caterpillar Inc.</u>, 482 U.S. at 392–93.  The

well-pleaded complaint rule recognizes that the plaintiff is the "master of the

claim," and a plaintiff may—except in cases of complete federal preemption—

"avoid federal jurisdiction by exclusive reliance on state law." <u>Id.</u>  To support

removal based on federal-question jurisdiction, a defendant must show that the

plaintiff has (1) alleged a federal claim, <u>Am. Well Works Co. v. Layne & Bowler</u>

<u>Co.</u>, 241 U.S. 257, 260 (1916); (2) alleged a state cause of action that Congress has

transformed into an inherently federal claim by completely preempting the field,

<u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65 (1987); or (3) alleged a state-law

claim that necessarily raises a disputed and substantial issue of federal law that a

federal court may entertain without disturbing federal/state comity principles,

<u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308 (2005).

In the instant case, the Complaint alleges only state-law causes of action: wrongful discharge, negligent misrepresentation, and fraud. (See doc. # 1-3 ¶¶ 15–24.)  Moreover, Defendants conceded at the hearing that Plaintiff's claims are not preempted by federal law.  Instead, Defendants argue that this Court has federal-question jurisdiction because each of Plaintiff's state-law causes of action raises a substantial federal issue that is actually disputed: whether Defendants did, in fact, violate federal law by misclassifying Plaintiff as an independent contractor for tax purposes.  (Doc. # 20 ¶ 13.)

In order to demonstrate that there is a federal issue embedded in Plaintiff's state-law claims that is sufficient to support federal-question jurisdiction, Defendants must demonstrate that "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."  Singh v. Duane Morris LLP, 538 F.3d 334, 338 (5th Cir. 2008) (emphasis added) (citing Grable, 545 U.S. at 314).  If any one of these four prongs is not satisfied, a court should not exercise federal-question jurisdiction.

For the reasons that follow, the Court finds that Defendants have satisfied the first and second prongs of the Singh test but have not satisfied the

third and fourth prongs.  Accordingly, the Court concludes that it does not have federal-question jurisdiction over this case and that it is therefore appropriate to grant Plaintiff's Motion to Remand to State Court.

   i.  Resolving a Disputed Federal Issue Is Necessary to Resolution of

       Plaintiff's State-Law Claims

           a. Wrongful Termination

There can be little doubt that resolution of a federal issue is necessary to resolution of Plaintiff's state-law claims.  Plaintiff's first claim is for wrongful termination under Sabine Pilot, which requires a plaintiff to prove that: (1) she was required to commit an illegal act that carries criminal penalties; (2) she refused to engage in the illegality; (3) she was discharged; and (4) the sole reason for her discharge was her refusal to commit the unlawful act.  White v. FCI USA, Inc., 319 F.3d 672, 676 (5th Cir. 2003) (citing Sabine Pilot Serv., Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex. 1985)).  Plaintiff claims that she can satisfy these four elements by proving that "her discharge was for no other reason then [sic] for her refusal to cooperate with Defendant Alamo Travel Group's intentional acts of underpaying federal taxes while at the same time soliciting and servicing lucrative federal government contracts."  (Doc. # 1-3 ¶ 16.)  In other words, Plaintiff alleges

that she would have violated a law carrying criminal penalties if she had continued to file her taxes as an independent contractor.

Defendants are correct that this wrongful termination claim, while a creature of Texas state law, necessarily hinges on the determination of two questions of federal law: (1) whether Plaintiff was, in fact, wrongly classified as an independent contractor; and (2) whether Plaintiff would have been criminally liable if she had continued to file her taxes as an independent contractor.[2]  (Doc. # 20 ¶ 17.)

b.  Negligent Misrepresentation

Plaintiff's second claim is one for negligent misrepresentation.  The Texas Supreme Court "has . . . adopted the tort of negligent misrepresentation as

---

[2] Plaintiff insists that she need not prove, in order to succeed on her Sabine Pilot claim, that the actions she refused to perform were actually illegal—just that she "had a 'good faith, reasonable [belief] that the requested act might be illegal.'" (Doc. # 21 ¶ 13 (quoting Johnston v. Del Mar Dist. Co., 776 S.W.2d 768, 771–72 (Tex. App.—Corpus Christi 1989, writ denied).)  While that is indeed the holding of Del Mar, the Court agrees with the majority of Texas state courts that have concluded that Del Mar represented an "unlawful expansion of Sabine Pilot," which is a narrow, judicially created exception to the employment-at-will doctrine. Camunes v. Frontier Enters., Inc., 61 S.W.3d 579, 871 (Tex. App.—San Antonio 2001, writ denied); see also Mayfield v. Lockheed Eng'g & Sci. Co., 970 S.W.2d 185, 187–88 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); Ran Ken, Inc. v. Schlapper, 963 S.W.2d 102, 107 (Tex. App.—Austin 1998, pet. denied). Accordingly, the Court agrees with Defendants that, in order for Plaintiff to prevail on a Sabine Pilot claim, a court would have to find that she refused to commit an act that would actually have subjected her to criminal penalties.

described by the RESTATEMENT (SECOND) OF TORTS § 552." <u>McCamish,</u>

<u>Martin, Brown & Loeffler v. F.E. Appling Interests</u>, 991 S.W.2d 787, 791 (Tex.

1999) (citing <u>Fed. Land Bank Ass'n of Tyler v. Sloane</u>, 825 S.W.2d 439, 442 (Tex.

1991). Under this formulation, liability for negligent misrepresentation is limited

to circumstances in which (1) a professional—such as an attorney, auditor, or

doctor—"supplies false information for the guidance of others in their business

transactions"; (2) the party receiving the information justifiably relies upon the

information; (3) the professional "fails to exercise reasonable care or competence

in obtaining or communicating the information"; and (4) the relying party suffers a

pecuniary loss as a result. Restatement (Second) of Torts § 552 (1965).

Plaintiff alleges that Defendants negligently informed her that "the

only way she could continue to work for Alamo Travel was to accept employment

under the status of an independent contractor and that it was a legal classification

of her worker status." (Doc. # 1-3 ¶ 17.) Plaintiff claims that she justifiably relied

on Defendants' misrepresentations regarding her worker classification and suffered

a pecuniary loss (in the form of lost employee benefits) as a result. (Id. ¶ 19.)

Defendants are again correct that "[t]o prove her negligent

misrepresentation cause of action, Plaintiff must prove that [D]efendants'

representations about employment and tax law were, in fact, misstatements."

(Doc. # 20 ¶ 18.)

        c. <u>Fraud</u>

        Plaintiff's final claim is one for fraud.  Under Texas law, the elements of fraud are: (1) a false, material representation was made; (2) the representation was either known to be false when made or was made without knowledge of its truth; (3) the representation was intended to be acted upon; (4) it was relied upon; and (5) that reliance caused injury.  <u>See</u> <u>Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.</u>, 960 S.W.2d 41, 47 (Tex. 1998).

        Plaintiff alleges that "Defendant Alamo Travel represented to Plaintiff Marren [that] relocating to Las Vegas . . . would not affect her employment . . . and that she would continue as an 'employee'"; and, later, "that she would have to be classified as an 'independent contractor' in order to meet the legal requirements of her employment status in Nevada" (doc. # 1-3 ¶ 21).  The Complaint alleges that Defendants knowingly made these false representations "with the intent that Plaintiff act on [them] and . . . accept employment based on [them]."  (<u>Id.</u> ¶ 24.) Plaintiff further claims that she "accepted and relied on" these representations in moving to Las Vegas and "sustained monetary and other injuries as a result . . . ." (<u>Id.</u>)

Again, Defendants are correct that Plaintiff, who must prove that Defendants intentionally made a false representation, can do so only by reference to federal tax law.  (Doc. # 20 ¶ 20.)  In other words, to determine whether Defendants made false representations, a court would have to look to federal tax law to determine whether Plaintiff was correctly classified.  Accordingly, Defendants have satisfied the first prong of the federal-question test laid out in Singh.

ii.   The Federal Issues Are Disputed

Plaintiff argues in her Reply (doc. # 21) that the federal issues in this case are not "disputed" because

> the Internal Revenue Service has found that Alamo Travel is liable for back federal income tax withholding, back Federal Insurance Contributions Act tax (FICA), and back Federal Unemployment Tax Act (FUTA) tax, plus interest and penalties based on its misclassification of plaintiff as a contract worker rather than as an employee.  See Exhibit A (IRS Determination Letter dtd October 28, 2011).  Further, on information and belief Alamo travel has paid those back payroll taxes.  There are no substantial "embedded federal issues" to be decided.

Id. ¶ 14.  Again, the Court has not seen "Exhibit A," since it appears that Plaintiff inadvertently failed to attach it.

Plaintiff also appears to argue that there is no dispute concerning whether Plaintiff would have committed an illegal act by continuing to file her taxes as an independent contractor (see id. ¶ 16).  Plaintiff's only support for this

assertion, however, is a citation to I.R.C. § 7201 and a Sixth Circuit case affirming a conviction on four counts of evading the payment of federal income taxes. (Id.) In other words, Plaintiff appears to be arguing that since the statutes speak for themselves, there can be no real dispute that Defendants attempted to force Plaintiff to commit acts that would have subjected her to criminal liability.

The Court finds this argument unavailing. In their Answer, Defendants denied Plaintiff's allegations, including the allegation that the IRS concluded Plaintiff had been improperly classified (see doc. # 6 ¶ 11) and the allegation that Plaintiff was terminated for refusing to commit an "illegal act" (see id. ¶ 16). Accordingly, the Court concludes that these federal issues are, indeed, "disputed."

iii.   The Disputed Federal Issues Are Not Substantial

The third prong of the Singh test—whether the disputed federal issue is "substantial"—is what dooms Defendants' argument for removal. While there is no bright-line rule regarding whether a state-law claim presents a "substantial" federal question, the Supreme Court has identified a number of factors that weigh in favor of such a finding: (1) that the case presents a nearly pure issue of law that would control many other cases rather than an issue that is fact-bound and situation-specific; (2) that the federal government has an important interest in the

14

issue, particularly if the case implicates a federal agency's ability to vindicate its rights in a federal forum; and (3) that a determination of the federal question will be dispositive of the case.  See Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 700–01 (2006) (analyzing Grable, 545 U.S. at 313).  It is instructive to begin the "substantiality" analysis with a discussion of two recent Supreme Court cases—Grable and Empire Healthchoice—addressing the issue.

In Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, the plaintiff filed a state-law claim to quiet title, alleging that the defendant's record title was invalid because the IRS, in seizing the plaintiff's property to satisfy a federal tax deficiency, had failed to give the plaintiff proper notice pursuant to 26 U.S.C. § 6335(a).  545 U.S. at 310–11.  Although the complaint did not set forth a federal cause of action, the Court recognized that the state-law claim presented a "substantial" question regarding the interpretation of federal law—specifically, did § 6335(a) require that Grable receive personal service, or was service by certified mail sufficient?  "The meaning of the federal tax provision," held the Court, "is an important issue of federal law that sensibly belongs in a federal court."  Id. at 315 (emphasis added).  Moreover, the interpretation for which Grable was arguing implicated the ability of the federal government (i.e., the IRS) "to vindicate its own administrative action . . . ."  Id.

15

"'[I]t is plain,'" the Court concluded, "'that a controversy respecting the

construction and effect of the [federal] laws is involved and is sufficiently real and

substantial'" to support the exercise of federal jurisdiction.  Id. at 316 (alteration in

original; emphasis added) (quoting Hopkins v. Walker, 244 U.S. 486, 489 (1939)).

   Just a year later, in Empire Healthchoice Assurance, Inc. v. McVeigh,

the Supreme Court made clear that Grable should be read narrowly—that it would

justify federal-question jurisdiction in only a "slim category" of cases.  547 U.S.

677, 681 (2006).  In Empire Healthchoice, the Court addressed whether the Federal

Employees Health Benefits Act of 1959, which "preempt[s] any State or local law

. . . [that] relates to health insurance or plans," id. at 677 (citing

5 U.S.C. § 8909(m)(1)), allowed an insurance carrier that provided benefits in

accordance with the Act to bring reimbursement claims in federal court.  Id.  The

dispute arose when an individual that Empire Healthchoice ("Empire") had insured

filed a state-law tort claim for injuries suffered in an accident.  Id. at 678.  The

parties in the tort case settled, and Empire—which had paid for the insured's

medical expenses—filed suit in federal court to recover a portion of the settlement

claim.  Id.  Empire argued, inter alia, that its reimbursement claim arose under

federal law "because federal law [was] a necessary element of [its] claim for

relief."  Id. at 700 (internal quotation marks omitted).  The Court disagreed,

emphasizing again that "it takes more than a federal element to open the 'arising under' door."  Id. at 701 (quoting Grable, 545 U.S. at 313).  A crucial factor in Grable's substantiality analysis, said the Court, was the presence of a "nearly 'pure issue of law,' one that could be settled once and for all and thereafter would govern numerous tax sale cases."  Id. at 700 (emphasis added) (quoting Hart and Wechsler's The Federal Courts and the Federal System 65 (2005 Supp.) [hereinafter Hart & Wechsler]).  By contrast, the federal issue in Empire Healthchoice—"the extent to which the reimbursement should take account of attorney's fees"—was "fact-bound and situation-specific," making the exercise of federal jurisdiction inappropriate.  Id. at 701.  While the case did involve federal law, then, the Court concluded that there was no pressing need for a federal court to hear it: "The state court in which the personal-injury suit was lodged is competent to apply federal law, to the extent it is relevant . . . ."  Id.

For the reasons that follow, the Court concludes that Plaintiff's claims—while they do require the application of federal law—do not raise a "substantial federal question" within the meaning of Supreme Court precedent.

a.  <u>The Federal Issues in This Case Are Fact-Bound and</u>

<u>Situation-Specific</u>

As the Supreme Court explained in <u>Empire Healthchoice</u>, central to

the Court's decision in <u>Grable</u> was the fact that the case "presented a <u>nearly 'pure</u>

<u>issue of law</u>,' one 'that could be settled once and for all and thereafter would

govern numerous tax sale cases.'" <u>Empire Healthchoice</u>, 547 U.S. at 700 (quoting

Hart & Wechsler 65 (2005 Supp.) (emphasis added).  "Whether Grable was given

notice within the meaning of the federal statute is . . . an essential element of its

quiet title claim," said the Court, "and <u>the meaning of the federal statute</u> is actually

in dispute . . . ." <u>Grable</u>, 545 U.S. at 315 (emphasis added).

The Fifth Circuit followed this reasoning in <u>Singh v. Duane Morris</u>

<u>LLP</u>, concluding that a federal question was not "substantial" in part because it

was "predominantly one of fact."  538 F.3d at 339.  In that case, the plaintiff,

Singh, had brought a malpractice action in state court against the attorney who had

represented him in a trademark infringement action.  <u>Id.</u> at 337.  The defendant

removed the case to federal court, arguing—correctly—that "resolving the

malpractice claim necessarily require[d] resolving a federal question—to-wit,

whether Singh could have established secondary meaning in his trademark."  <u>Id.</u>

In other words, the defendant pointed out that in order for Singh to prevail, the

presiding court would have to determine—under federal trademark law—that the evidence that he had failed to present would have established secondary meaning. The Fifth Circuit held that this federal question was "not substantial." Id. at 338. Looking to Grable, the court noted that the federal issue there was substantial because "'the meaning of the federal tax provision is an important issue of federal law'" and because "the IRS notice requirements implicate the government's 'strong interest in the prompt and certain collection of delinquent taxes.'" Id. at 339 (emphasis added) (quoting Grable, 545 U.S. at 314). "In contrast," said the court,

> this case involves no important issue of federal law.  Instead, the federal issue is predominantly one of fact—whether Singh had sufficient evidence that his trademark had acquired secondary meaning.  Though obviously significant to Singh's claim, that issue does not require "resort to the experience, solicitude, and hope of uniformity that a federal forum offers."

Id. (quoting Grable, 545 U.S. at 312).  As in Empire Healthchoice, therefore, the court's determination that the state-law claim did not present a "substantial" question of federal law rested primarily on its determination that the case merely required a court to apply federal law to the facts, not to settle a dispute over the meaning of federal law.  See Empire Healthchoice, 547 U.S. at 701 (distinguishing Grable on the ground that it presented a "nearly 'pure issue of law,'" unlike the "fact-bound and situation-specific" claim at issue in the case before it); see also

Adventure Outdoors Inc. v. Bloomberg, 552 F.3d 1290, 1300 (11th Cir. 2008) (finding that a federal question was not substantial because the "meaning of the relevant federal law" was clear and not actually in dispute; only the application of the law to the facts was); Bennett v. Sw. Airlines Co., 484 F.3d 907, 910 (7th Cir. 2007) (Easterbrook, J.) (denying federal-question jurisdiction in a case involving "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law").

Just as in Empire Healthchoice and Singh, the instant case does not require a court to determine the meaning of a federal law. The construction of the federal law regarding classifications of workers as employees or independent contractors—which merely incorporates by reference "the usual common law rules" on the subject, see I.R.C. § 3121(d)(2)—is not in dispute in this case; only the application of that law to the facts is. In other words, neither party argues that an ambiguous provision of federal law should be interpreted in a way that would guarantee them victory in this case. Cf. Grable, 545 U.S. at 315 ("[T]he meaning of the federal statute . . . appears to be the only legal or factual issue contested in the case."). Nor is any party questioning the constitutionality of the federal law classifying workers for tax purposes or criminalizing intentional tax evasion. Cf. Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 201–02 (1921) (holding that

federal jurisdiction was proper because of the significant federal interest in determining the constitutionality of a federal statute).  Instead, both parties argue that, under well-settled law, the <u>facts</u> of this case will support a finding (1) that Plaintiff was incorrectly (in Plaintiff's view) or correctly (in Defendants' view) classified; and (2) that Defendants did (in Plaintiff's view) or did not (in Defendants' view) ask Plaintiff to violate a federal criminal law.

As the <u>Grable</u> Court explained, the Supreme Court's precedent on federal-question jurisdiction "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.  That need for uniformity is simply not implicated here.  This case turns not on the interpretation of a disputed provision of federal law but on the application of common-law principles to the specific facts of Plaintiff's employment.  <u>See</u> I.R.C. § 3121(d)(2) (explaining that the distinction between an employee and an independent contractor for federal tax purposes is based on "the usual <u>common law rules</u> applicable in determining the employer-employee relationship") (emphasis added).  Accordingly, this factor weighs in favor of a finding that the federal questions in this case are not "substantial."  <u>See</u> <u>Empire</u>

Healthchoice, 547 U.S. at 681 (finding no "substantial" federal question where the federal issue was "fact-bound and situation-specific"); see also Isbell v. Stewart & Stevenson, Ltd., 9 F. Supp. 2d 731, 734 (S.D. Tex. 1998) (holding that the need to apply federal criminal law in a Sabine Pilot claim does not present a substantial federal question because "[t]he state court is able to identify the elements of these basic criminal statutes and no complex interpretation of these laws is necessary" and because "[t]he federal statutes are not central to [a Sabine Pilot] claim, which is a unique creature of state law").

Hughes v. Chevron Phillips Chemical Co. LP, 478 F. App'x 167 (5th Cir. 2012), the unpublished Fifth Circuit case on which Defendants rely, in fact supports the conclusion that the federal questions in this case are not substantial. Defendants cite Hughes for the broad proposition that there is "federal jurisdiction over state-law claims involving interpretation of federal tax law . . . ." (Doc. # 20 ¶ 3.) "Resolution of the federal question in Grable," argue Defendants, "depended on interpretation of the same federal law that is in issue in this case—federal tax law" (id. ¶ 4), so this Court must have federal-question jurisdiction over Plaintiff's claims. That conclusion, however, does not follow; while Hughes, like Grable, involved a dispute over the meaning of federal law, the instant case does not. In Hughes, the plaintiff argued that he [did] not have 'wages,' 'salary,' or 'income,'

as those terms are defined under federal law, and that the Code sections dealing

with levy and garnishment appl[ied] only to excise taxes on alcohol and tobacco."

Id. at 171.  In other words, the plaintiff "[sought] to interpret the federal tax code in

a manner that exempt[ed] him from its reach."  Id. at 171 (emphasis added).  Thus,

just as in Grable, "[t]he meaning of the federal tax provision" was at issue.  Id.

(emphasis added) (quoting Grable, 545 U.S. at 315).  Because this case does not

involve a dispute about the meaning of federal law—a "nearly pure issue of law,"

Empire Healthchoice, 547 U.S. at 700—the first factor of the Empire Healthchoice

analysis weighs against a finding that the federal questions in this case are

"substantial."

          b.  The Federal Government Has Little Interest in This Case

        The second factor, whether the federal government has an important

interest in the resolution of the federal question, also weighs against a finding that

Plaintiff's claims raise a substantial federal question.  As the Supreme Court

explained in Empire Healthchoice, the federal question in Grable was substantial in

part because "[t]he dispute there centered on the action of a federal agency (IRS)

and its compatibility with a federal statute . . . ."  547 U.S. at 700.  In other words,

the interpretation of federal law for which Grable was arguing implicated the

ability of the federal government "to vindicate its own administrative action . . . ."

Grable, 545 U.S. at 315.  By contrast, the federal question in Empire Healthchoice

was not substantial in part because "the reimbursement claim was triggered, not by

the action of any federal department, agency, or service, but by the settlement of a

personal-injury action launched in state court"; the federal government did not

have a direct stake in the outcome of the case.  Empire Healthchoice, 547 U.S. at

700.  Similarly, in Singh (in which the Fifth Circuit vacated the district court's

order for lack of jurisdiction), the court contrasted Grable, in which the disputed

"IRS notice requirements implicate[d] the government's strong interest in the

prompt and certain collection of delinquent taxes," with the case before it, to which

no federal agency was a party.  538 F.3d at 339; see also Adventure Outdoors, 552

F.3d at 1301 (finding that the case was "unlikely to impact the federal

government's interests or its ability to vindicate [its] interests through

administrative action" because "the plaintiffs [had] not challenged the actions of

. . . the agency charged with enforcing [the relevant federal laws]").

      As in Empire Healthchoice, Singh, and Adventure Outdoors, Plaintiff

has not challenged the actions of any federal agency.  Plaintiff is not seeking a tax

refund and has not accused the IRS of any wrongdoing.  Instead, under the

Plaintiff's theory, the IRS was an innocent third party that, like Plaintiff, merely

relied on the misrepresentations Defendants made.  In this respect, Plaintiff's suit

is very similar to <u>Mikulski v. Centerior Energy Corp.</u>, 501 F.3d 555 (6th Cir. 2007)

(en banc).  In that case, even though the parties disagreed about the interpretation

of a provision of the tax code (meaning the first prong of the substantiality analysis

worked in their favor), the court nonetheless concluded that the federal issue was

"not substantial" because the federal government had only limited interest in the

outcome of the suit.  <u>Id.</u> at 570.  The court noted that "no federal agency" was

involved in the suit; and "[u]nlike <u>Grable</u>, in which the IRS's prevailing practice

was alleged to violate due process, this case [would] have no <u>res judicata</u> effect

that would apply to the IRS, no matter which court, federal or state, decides the

case."  <u>Id.</u>  The federal government, explained the court, "has only a limited

interest in private tort or contract litigation over the <u>private duties involved [in the</u>

<u>collection of taxes</u>]."  <u>Id.</u> (emphasis added).  While "[t]he IRS undoubtedly has an

interest in collecting taxes, . . . it is of no consequence to the IRS whether this case,

or any like it, is resolved in federal court rather than the state court."  <u>Id.</u>

   Similarly, the IRS's important interest in collecting taxes will not be

affected by the outcome of this case.  The IRS is not a party to this case and

accordingly would not be bound by a court's determination of Plaintiff's proper

employment classification.  <u>See</u> <u>Comm'r of Internal Revenue v. Bosch's Estate</u>,

387 U.S. 456, 457 (1967) (holding that "federal authorities are not bound" by

state-court determination of facts affecting federal tax liabilities if the United

States was not a party to the state proceedings); Cappaert v. United States, 426

U.S. 128, 146–47 (holding that the United States was not barred from re-litigating

its water rights in federal court since it was not a party to the state proceedings)

(1976); Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 329

(1971) ("[Litigants] who never appeared in a prior action [] may not be collaterally

estopped without litigating the issue . . . .  Due process prohibits estopping them

despite one or more existing adjudications of the identical issue which stand

squarely against their position."); Settlement Funding, LLC v. TransAmerica

Occidental Life Ins. Co., 555 F.3d 422 (5th Cir. 2009) ("[T]he United States was

not a party to the [state] class action and is thus not bound by it.").  Because the

Plaintiff in this case—unlike the plaintiff in Grable—has not challenged the IRS's

actions, the case will have no res judicata effect that would apply to the IRS in any

future case.  See Mikulski, 501 F.3d at 571 (noting, in a case to which the IRS was

not a party, that "[t]he government's ability to collect taxes . . . [will not be]

affected by the resolution of the dispute between these two parties[,] . . . [because]

[t]he government is free to interpret and apply the tax code as it sees fit, without

the slightest regard for this lawsuit").  In other words, a state court's determination

that Defendants deliberately misclassified Plaintiff as an independent contractor

would not require the IRS to treat her as an employee, to collect or refund taxes, or to take or refrain from taking any other action in Plaintiff's or any other case.

If, at some point in the future, either party wishes to recover from the IRS taxes allegedly erroneously assessed or collected, they may do so—after exhausting administrative remedies by filing a claim with the IRS itself. See I.R.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary . . . ."). The instant case, however, is not one for a tax refund; and a determination, in state or federal court, of Plaintiff's proper classification would not bind the IRS in a future action.

Another factor relevant to a determination that the federal government has a strong interest in a state-law claim is whether Congress has created a private remedy for violations of the federal statute involved. See Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 812 (1986) ("The significance of the necessary assumption that there is no federal private cause of action . . . cannot be overstated. For the ultimate import of such a conclusion . . . is that it would flout congressional intent to provide a private federal remedy for the violation of

27

the federal statute."); see also Singh, 538 F.3d at 338–39 (noting that Merrell Dow "held that where Congress has provided no private remedy for the violation of a . . . statute, the fact that violation of the statute is an element of a state tort claim is insufficient to establish a substantial federal interest").  While the Fifth Circuit has yet to address the question, other courts of appeals have concluded that FICA, which is a tax-raising statute rather than a benefit-conferring statute, does not create a private right of action to remedy employee misclassifications.  See Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 67 (3d Cir. 2008); McDonald v. S. Farm Bureau Life Ins. Co., 291 F.3d 718, 726 (11th Cir. 2002); see also Glanville v. Dupar, 727 F. Supp. 2d 596, 600 (S.D. Tex. 2010) ("This court believes that if the Fifth Circuit were to consider this issue, it would follow the reasoning of the Third and Eleventh Circuits to find no implied private right of action under FICA.").  As the Fifth Circuit noted, "[t]he Merrell Dow Court reasoned that because Congress had established no private remedy for violations of the statute, it had no substantial interest in seeing the statute applied in state tort cases."  Singh, 538 F.3d at 339.  Similarly, in the instant case, the fact that Congress has not created a private right of action to remedy employee misclassifications weighs against a finding that the federal government has a "substantial interest in seeing the statute applied in state tort cases."  Id.

Accordingly, both because the United States is not a party to this case and because Congress has not created a private right of action under FICA, the Court concludes that the second factor—the federal government's interest in the litigation—weighs against a finding that this case presents a "substantial" federal question.

### c.   The Federal Issues Are Not Dispositive of the Case

The third factor that Empire Healthchoice suggested was relevant to an analysis of the substantiality of a federal question is whether the federal issue would be "dispositive of the case."   Empire Healthchoice, 547 U.S. at 700.  In Mikulski, the Sixth Circuit concluded that this factor weighed against a finding that the federal question before it was "substantial" because even "[i]f the plaintiffs prevail[ed] on their construction of [the statute]," they still had to "prove the remaining elements of fraudulent misrepresentation (such as intent) or breach of contract (such as the existence of a contract)."  Mikulski, 501 F.3d at 571.  The Eleventh Circuit came to the same conclusion in Adventure Outdoors, noting that even "[i]f the trial court conclude[d] that federal law does not prohibit participation in simulated straw purchases"—that is, even if the court found that the plaintiffs had not violated federal law—the plaintiffs could not succeed on their defamation claim without showing, "among other things, that the defendants' statements were

not privileged."  552 F.3d at 1301.  In both cases, then, the fact the plaintiff would

not automatically prevail if a court found in his favor on the federal issue weighed

against a finding that the federal issue was "substantial."

In the instant litigation, the federal issues embedded in Plaintiff's

claims quite clearly do not dispose of the case.  Even if a court finds that Plaintiff

was misclassified as an independent contractor and that she would have been

subject to criminal penalties if she had continued to file her taxes as one, Plaintiff

would still need to prove, in order to succeed on her Sabine Pilot claim, (1) that she

actually refused to file her taxes as an independent contractor and (2) that the sole

reason for her discharge was her refusal to do so.  See White v. FCI USA, Inc., 319

F.3d 672, 676 (5th Cir. 2003).

Similarly, even if a court finds that Plaintiff was misclassified as an

independent contractor, in order to succeed on her negligent misrepresentation

claim, Plaintiff would still have to establish (1) that Defendants qualified as the

type of "professional" (most commonly an attorney, auditor, accountant, or doctor)

that could be liable to Plaintiff for negligent misrepresentation; (2) that Defendants

supplied her with false information "for the guidance of [her] business

transactions"; (3) that Defendants "fail[ed] to exercise reasonable care or

competence in obtaining or communicating the information"; and (4) that Plaintiff

suffered a pecuniary loss as a result.  See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 791 (Tex. 1999).

Finally, even if a court finds that Plaintiff was misclassified as an independent contractor, in order to succeed on her fraud claim, Plaintiff must prove (1) that Defendants knew that their misrepresentations about Plaintiff's proper classification were false or made them without knowledge of their truth or falsity; (2) that Defendants intended that Plaintiff rely on their misrepresentations; (3) that Plaintiff did so rely; and (4) that her reliance caused her injury.  See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998).

Contrary to the situation in Grable, therefore, finding in favor of Plaintiff on the aforementioned federal issues would not be "dispositive of the case."  Empire Healthchoice, 547 U.S. at 700.  Accordingly, the third "substantiality" factor also weighs against a finding that federal-question jurisdiction is appropriate in this case.

In light of the fact that all three "substantiality" factors—whether the case presents a nearly pure issue of law, whether the federal government has an important interest in the issue, and whether a determination on the issue will be dispositive—weigh against a finding that the federal issues embedded in Plaintiff's

31

claims are "substantial," the Court concludes that Defendants have not satisfied the third prong of the test for federal-question jurisdiction described in <u>Singh</u>.

      iv.  <u>Exercising Federal Jurisdiction Would Disturb the Balance of Federal and State Judicial Responsibilities</u>

The fourth and final prong of the test for federal-question jurisdiction laid out in <u>Singh</u> is whether federal jurisdiction will disturb the balance of federal and state judicial responsibilities.  <u>Singh</u>, 538 F.3d at 338.  In <u>Grable</u>, the Court observed that "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction."  545 U.S. at 314.  In <u>Grable</u>, therefore, the Supreme Court explained that federal courts must weigh "the importance of having a federal forum for the issue" against "the consistency of such a forum with Congress's intended division of labor between state and federal courts."  <u>Id.</u> at 319.  Finding that the substantial federal question in the case before it was rare, the Court concluded that exercising federal-question jurisdiction would "portend only a microscopic effect on the federal-state division of labor" and was therefore appropriate.  <u>Id.</u> at 313.

The same cannot be said about this case.  Adopting Defendants' reasoning and holding that federal-question jurisdiction exists in any case in which

a court must look to and apply federal tax law would, as the Supreme Court was careful to avoid in Grable, "herald[] a potentially enormous shift of traditionally state cases into federal courts."  545 U.S. at 319; see also Merrell Dow, 478 U.S. at 811 (denying jurisdiction over a state tort claim involving a federal issue while expressing concern over "the increased volume of federal litigation").  Under Defendants' reasoning, a federal court would have jurisdiction over almost any state-law tort claim in which the plaintiff alleged as an element that the defendant failed to comply with a provision of the federal tax code.  For example, Defendants' reasoning would support the exercise of federal-question jurisdiction over almost all malpractice claims brought against tax attorneys, since a court would have to look to federal tax law to determine whether the attorney had breached his or her duty.  See Singh, 538 F.3d at 340 (noting with disapproval that, under the plaintiff's theory, "federal jurisdiction could extend to every instance in which a lawyer commits alleged malpractice during the litigation of a federal claim" and that "[t]hat would constitute a substantial usurpation of state authority in an area in which states have traditionally been dominant").  Barring a strong interest in a federal forum, claims for wrongful termination, negligent misrepresentation, and fraud—traditionally state-law claims—should be litigated in state court; and, for the reasons already given, there is no pressing need for this

or any other federal court to take jurisdiction over the instant case, which does not present a substantial federal question.

The fact that the state court will have to refer to federal law to determine whether Plaintiff was correctly classified is not problematic. It is "axiomatic" that state courts "are generally presumed competent to interpret and apply federal law." Mikulski, 501 F.3d at 560, 561 (citing Zwickler v. Koota, 389 U.S. 241, 245 (1967)). As the Eleventh Circuit explained in Adventure Outdoors, "[i]n resolving the federal issue, the state court would be guided by federal court interpretations of the relevant criminal statutes." 552 F.3d at 1300–01; see also Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 293 (1997) (O'Connor, Scalia, and Thomas, JJ., concurring in part and concurring in the judgment) ("Nor does acknowledging the interpretive function of federal courts suggest that state courts are inadequate to apply federal law.") (emphasis added). Indeed, as the Seventh Circuit recently noted, "there is nothing unusual about a court having to decide issues that arise under the law of other jurisdictions; otherwise there would be no field called 'conflict of laws' and no rule barring removal of a case from state to federal court on the basis of a federal defense." Hays v. Cave, 446 F.3d 712, 714 (7th Cir. 2006). Again, the Supreme Court specifically stated in Grable that it did not hold "the expansive view that the mere need to apply federal law in a

state-law claim will suffice to open the 'arising under' door," 545 U.S. at 313 (emphasis added); and in <u>Empire Healthchoice</u> it expressed confidence that, upon remand, the state court would be "competent to apply federal law, to the extent it [was] relevant . . . ." <u>Id.</u>  In this case, the Court has no doubt that a Texas state court would be perfectly capable of determining whether, under well-settled law, Plaintiff was misclassified as an independent contractor—particularly because the relevant federal law states that the distinction between an employee and an independent contractor for federal tax purposes is based on "the usual <u>common law rules</u> applicable in determining the employer-employee relationship . . . ." I.R.C. § 3121(d)(2) (emphasis added); <u>see also</u> Mertens Law of Fed. Income Taxation § 47A:8 ("The determination of employee status [for purposes of federal income tax] is to be made by common law concepts.").

      For the reasons given, the Court concludes that Defendants have failed to show that exercising federal jurisdiction would not disturb the balance of federal and state judicial responsibilities and, therefore, that Defendants have not satisfied the fourth and final prong of the <u>Singh</u> test for federal-question jurisdiction.

\*      \*      \*

This Court, as a court of limited jurisdiction, must construe the jurisdictional statutes strictly and resolve any doubts against federal jurisdiction. Boelens, 748 F.2d at 1067; see also Eastus, 97 F.3d at 106 (acknowledging that the removal statutes are to be construed "strictly against removal and for remand"). The Supreme Court has cautioned that courts should make "principled, pragmatic distinctions" and "careful judgments about the exercise of federal judicial power." Merrell Dow, 478 U.S. at 813–14.  The burden of establishing federal jurisdiction rests on the party seeking the federal forum—Defendants, in this case—and, for the reasons given above, the Court finds that Defendants have failed to satisfy two of the four requirements for federal-question jurisdiction described in Grable and Singh.  Accordingly, the Court grants Plaintiff's motion and remands this case to state court.

II.    Defendants' Motion to Dismiss for Failure to State a Claim

In light of the Court's determination that this matter should be remanded to state court, Defendants' Motion to Dismiss (doc. # 5) is denied without prejudice as moot.

<u>CONCLUSION</u>

For the reasons given, Plaintiff's Motion to Remand to State Court

(doc. # 17) is **GRANTED**, and Defendants' Motion to Dismiss (doc. # 5) is

**DENIED WITHOUT PREJUDICE AS MOOT.**

        **IT IS SO ORDERED.**

        **DATED**:  San Antonio, Texas, March 18, 2013.

_____
David Alan Ezra
Senior United States District Judge